
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SALLY DUFF, *et al.*,

    Plaintiffs,

    v.

THE MCGRAW-HILL COMPANIES, INC.,

    Defendant.

Case No. C02-1347L

ORDER REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for partial summary judgment filed by defendant The McGraw-Hill Companies, Inc. ("MGH") (Dkt. #21). Plaintiffs are Sally Duff and her two daughters, Beth Perry and Ruth Romer, both of whom are teachers. They bring a cause of action for breach of contract.

For the reasons set forth below, the Court grants defendant's motion.

## II. DISCUSSION

**A.    Background Facts.**

Plaintiffs conceived of and developed educational software products called MatchWord, MatchEntry, MatchBook, MatchBook Online, and MatchBook Administrator (collectively, the

ORDER REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

"Products"). The MatchWord software was designed to break down children's books into phonics as an aid in teaching children to read. In January 2000, plaintiffs sold the Products to The Wright Group ("TWG"),[1] which was then a subsidiary of the Chicago Tribune. The terms of the sale were memorialized in an Asset Purchase Agreement (the "Agreement"). At the time the Agreement was executed, plaintiffs had sold only MatchWord. TWG refers to the other products as the "Unfinished Products," and the Court adopts that terminology.

The Agreement requires TWG to pay plaintiffs royalties based on the sale of the Products. Plaintiffs allege that TWG breached the Agreement by failing to pay them all royalties owed, and by failing to develop, market and sell the Products with good faith and reasonable diligence.

TWG filed its motion for partial summary judgment seeking to dismiss plaintiffs' claims regarding the Unfinished Products. Plaintiffs assert that defendant has sold at least some of the Unfinished Products, but has not paid royalties or held contractually-required meetings with plaintiffs to discuss the marketing and sales of the Products. TWG argues that it has never sold any of the Unfinished Products. Therefore, TWG contends that plaintiffs are not entitled to royalties based on the Unfinished Products or to meet to discuss their marketing and sales.

**B.   Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact . . . ." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W.

---

[1] After the parties executed the Agreement, TWG was acquired by MGH; as a result, MGH succeeded to TWG's rights and obligations under the Agreement. The Court will refer to defendant as "TWG" as the parties did in their memoranda.

ORDER REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

## C. Breach of Contract Issues.

The following provisions in the Agreement are relevant to this motion:

> **2.3.3 Length of Royalty Payment Obligation.** (a) With respect to [the Unfinished Products], Buyer's royalty obligation shall begin accruing on the date of Buyer's first sale[2] of the respective product and shall cease accruing 5-1/2 years thereafter.
>
> **2.3.6 Publisher's Discretion.** Buyer shall have absolute and sole discretion on all matters regarding the manner and extent of development, publication, marketing, sale, licensing and distribution of the above products.
>
> **7.1 Marketing and Promotion by Buyer.** Buyer covenants and agrees that, during the relevant Royalty Periods, Buyer shall: (a) in good faith and with reasonable diligence, use commercially reasonable efforts to manufacture, produc[e], market and distribute MatchBook Systems Products, subject at all times to Buyer's right to manage its business in its sole and absolute discretion with or without regard to prevailing economic or other business conditions . . . .
>
> **7.2 Cooperation Regarding Product and Market Development.** Buyer will cooperate in good faith with Sellers to periodically reexamine the definitions of Matchbook Systems Products to take into consideration changes (technological or otherwise) in the market for products competitive with MatchBook Systems Products and the marketing and sale of such products, such that as between Buyer and Sellers a fair and equitable (based on the percentages set forth in Sections 2.3.1 and 2.3.2 hereof) allocation of revenue is maintained throughout the term of the applicable Royalty Periods for products and materials (including methods of marketing and sales) developed after the Closing Date; . . . .

Agreement at pp. 4-5, 12-13. During their depositions, plaintiffs alleged that TWG breached its obligation to develop and market the Unfinished Products, regardless of whether any sales had occurred. Plaintiffs have abandoned that argument, and acknowledge that TWG's obligations to pay royalties and to cooperate under sections 7.1 and 7.2 of the Agreement are triggered only

---

[2] Plaintiffs argue that the term "first sale" is ambiguous, raising an issue of fact as to its meaning. Plaintiffs' Opposition at 11. However, there is no evidence that the term is ambiguous or that it should not be given its ordinary meaning.

ORDER REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

after the Royalty Period has begun for each product.[3] Plaintiffs also acknowledge that the Royalty Period for the Unfinished Products begins only after the first sale of the product.[4] If no sale has occurred, then TWG's obligations have not yet been triggered.

TWG has submitted a sworn declaration stating that according to its records, it has never sold any products other than MatchWord. See Declaration of Robert Simons at ¶ 4. Furthermore, during their depositions, plaintiffs admitted that the Royalty Period had not yet begun for any product other than MatchWord. Duff Dep. at 205; Romer Dep. at 84, 87-88.

Despite their unequivocal deposition statements, plaintiffs now allege that issues of fact exist regarding what products TWG sold and when they sold them. Plaintiffs contend that certain evidence suggests that TWG has sold products other than MatchWord. First, plaintiffs note that in TWG's discovery responses, TWG stated that "one or more of the Products is currently being sold" in the United States, the U.K., New Zealand, and Australia. Declaration of Mark Rosencrantz, Ex. B at Interrogatory Resp. #6. Plaintiffs argue that because the response refers to "one or more of the Products," and because they have received royalties only for MatchWord sales in the U.S. and U.K., the response shows that TWG is selling the Unfinished Products. However, the term "Products" is defined in the interrogatories to include the Products "together with all subsequent variations of any of them," so the response does not show that products other than MatchWord were sold. Reply Declaration of Gavin Skok, Ex. C. TWG also stated in the same discovery responses that MatchBook and MatchEntry were not commercially viable, undermining any interpretation of interrogatory #6 to suggest that TWG has sold those

---

[3] In their memorandum in opposition to the motion, plaintiffs conceded that the requirements of section 7.2 are triggered by the beginning of the Royalty Period. Although counsel retreated from that position during oral argument, the Court finds that section 7.2 is triggered by the beginning of the Royalty Period based on plaintiffs' earlier concession and based on the plain language of the Agreement.

[4] Notably, it was plaintiffs who suggested during negotiations of the Agreement that the Royalty Period for the Unfinished Products not begin until the first sale of each product.

ORDER REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4

products.  Id., Ex. D.  Second, plaintiffs allege that Ms. Duff received two phone calls from entities other than TWG requesting her assistance in installing MatchEntry.  The first came from an unnamed person at McMillan in New Zealand.[5]  The second call came from Warren Sly at Mimosa, one of MGH's subsidiaries, in Australia; Ms. Duff received an e-mail from an individual at TWG stating that they had given MatchEntry to Mimosa.  Duff Dep. at 84-86.  The telephone calls are hearsay, and the Court cannot consider them in ruling on the motion for summary judgment.[6]  Moreover, plaintiffs admit that TWG's internal sharing of the software is not a "sale" triggering the royalty period.  Duff Dep. at 115-16, 201.  Furthermore, at the time plaintiffs were deposed, they were aware of TWG's discovery responses and the two calls to Ms. Duff regarding MatchEntry, but they nonetheless acknowledged that the Royalty Period had not yet begun for the Unfinished Products.

Finally, plaintiffs allege that they have requested contractually-required meetings to discuss the marketing and sales of the Products, but TWG rebuffed them.  However, they acknowledge that the meeting requirement was triggered only once the Royalty Period began for the Unfinished Products.  Because plaintiffs have presented no admissible evidence that the Royalty Period began for any product other than MatchWord, TWG's obligations to pay royalties and to cooperate with plaintiffs to develop and market the Unfinished Products were never triggered.  Accordingly, TWG has not breached the Agreement with respect to the Unfinished Products.

---

[5] Plaintiffs allege that before Ms. Duff received the call from McMillan, Ms. Romer demonstrated MatchEntry to McMillan, and some unnamed person asked her how much the product cost and who should be contacted to inquire about a purchase.  Declaration of Ruth Romer at ¶ 2.  This statement is inadmissible hearsay.

[6] See, e.g., Beyene v. Coleman Security Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1998) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

ORDER REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5

## D. Rule 56(f) Continuance.

Plaintiffs request a continuance to obtain additional discovery regarding whether products other than MatchWord have been sold, who has those products, and how they got them. To obtain a Fed. R. Civ. P. 56(f) continuance, plaintiffs must make "'(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.'" See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting Visa Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986)). The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment. Id. at 1129-1130.

Despite the fact that this case was initially filed in June 2002, plaintiffs allege that their request is timely because they have not yet received information they requested in their written discovery requests regarding sales of the Products. TWG, however, responded to the requests in June 2004. Plaintiffs have never followed up on those responses, never requested additional information, and never moved to compel or otherwise inform TWG that the responses were inadequate. In light of these facts, plaintiffs' request for additional time to conduct discovery is denied as untimely. See, e.g., Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d at 1129-30 ("The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment").

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for partial summary judgment (Dkt. #21) and dismisses plaintiffs' claims to the extent that they relate to

products other than MatchWord.

DATED this 21st day of June, 2005.

*[signature]*

Robert S. Lasnik
United States District Judge

ORDER REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7